UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARIUSZ PRZYWIECZERSK,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTHONY BLINKEN, Secretary of State; UNITED STATES DEPARTMENT OF STATE; ALEJANDRO MAYORKAS, Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TRACY RENAUD, Acting Director of United States Citizenship & Immigration Services; and UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES,<br><br>    Defendants. | Civ. No. 20-02098 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    Dariusz Przywieczersk is a Polish citizen and lawful permanent resident ("LPR") of the United States. He was extradited to Poland, where he is or was serving a prison sentence. As a result, he fears that his LPR status is no longer valid, so he seeks declaratory and injunctive relief against federal agencies and their heads (the "Government") to preserve his LPR status and permit his eventual reentry. The Government moved to dismiss for lack of jurisdiction and failure to state a claim, *see* Fed. R. Civ. P. 12(b)(1), (6). (DE 13.) Mr. Przywieczersk opposed and moved to amend his First Complaint. (DE 27.)[1] For

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    1st Compl. = First Complaint (DE 1)

    2d Compl. = Amended Complaint (DE 27)

the following reasons, I will treat the motion to amend (DE 27) as a motion to supplement the original complaint, and that motion is **GRANTED**. Despite the supplemental allegations, the motion to dismiss (DE 13) is **GRANTED**.

## I. BACKGROUND

Mr. Przywieczerski is a Polish citizen who has been an LPR of the United States since 2001. (1st Compl. ¶ 2.) In September 2018, he was extradited to Poland. (*Id.* ¶ 7.) His term of imprisonment in Poland was then set to end on April 28, 2021, and his "alien registration card" (which the pleading does not more precisely define) expired on May 12, 2021. (*Id.* ¶ 8.)

He filed the First Complaint in February 2020 seeking, via the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, (1) a declaratory judgment that he remains an LPR, and (2) an injunction ordering the Government to provide him appropriate documentation to permit his return to the United States. (*Id.* ¶¶ 11–12.)[2] The Government moved to dismiss, arguing that the First Complaint was too threadbare and that any claims were not ripe. (Mot. to Dismiss.) In its motion, the Government explained the legal procedures that Mr. Przywieczerski could invoke for reentry under 8 C.F.R. § 211.1 (discussed further, *infra*). (*Id.* at 6–7.)

---

Mot. to Dismiss = Government's Brief in Support of its Motion to Dismiss (DE 13-1)

Opp. = Mr. Przywieczerski's Brief in Opposition to the Government's Motion to Dismiss (DE 28)

[2] The First Complaint named as defendants (1) Mike Pompeo, Secretary of State; (2) the Department of State; (3) Chad Wolf, Acting Secretary of Homeland Security; (4) the Department of Homeland Security; (5) Mark Koumans, Director of the United States Citizenship and Immigration Services ("USCIS"); and (6) USCIS. (1st Compl. ¶¶ 3–6.) As the Second Complaint clarifies, Anthony Blinken is now the Secretary of State; Alejandro Mayorkas is now the Secretary of Homeland Security; and Tracy Renaud is now the Acting Director of USCIS. (2d Compl. ¶¶ 3–5.) Pursuant to Fed. R. Civ. P. 25(d), when a public official is a party to an action and subsequently leaves office, that official's successor may be substituted. The accompanying order will direct the clerk of the court to amend the docket and caption accordingly.

Mr. Przywieczerski opposed the motion and concurrently moved to amend his First Complaint in May 2021. (DE 28, 27.) His Second Complaint did four things: (1) updated the government defendants with the current officeholders, (2) provided documents relating to his extradition process, (3) alleged that, because of subsequent developments, his term of imprisonment will not end in April but in October 2021, and (4) alleged that the Government "take[s] the position" that he "lost" his LPR status based on its interpretation of 8 C.F.R. § 211.1. (2d Compl. ¶¶ 3–5, 9, 11, Exs. A–D.) The Government opposed the motion to amend, arguing that the additional allegations do not cure the deficiencies identified in the motion to dismiss. (DE 13-1.)

## II. DISCUSSION

### A. Motion to Amend

First, some housekeeping. Currently pending are a motion to dismiss and a motion to amend. The Government asks that I grant the motion to dismiss and *then* deny the motion to amend on grounds of futility. *See generally Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010) (a district court may deny a motion to amend when the amended complaint "would fail to state a claim upon which relief could be granted" (citation omitted)).

Looking beyond the labels, I perceive that Mr. Przywieczerski has in substance presented not a motion to amend but a motion to supplement his already existing claims with recent factual developments. Federal Rule of Civil Procedure 15(a) provides for amending pleadings and "enable[s] a party to assert matters that were overlooked or were unknown" when the party filed the first complaint. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citation omitted). Rule 15(d), by contrast, provides for supplementing pleadings, *id.*, and "[a] supplemental pleading adds post-complaint events to the operative pleading and does not supersede it," *Korb v. Haystings*, --- F.

App'x ----, ----, No. 19-2826, 2021 WL 2328220, at *2 n.5 (3d Cir. June 8, 2021).

Such supplementation may allow a plaintiff to add newly arisen facts that, *e.g.*, cure jurisdictional defects. *Id.*; *see also Garrett*, 938 F.3d at 82. For example, a plaintiff may assert post-complaint facts that show that his alleged injury is no longer speculative, thus giving him standing or presenting the court with a now-ripe controversy. *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir. 2015); *Crimson Galeria Ltd. P'ship v. Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 34–35 (D. Mass. 2018); *Newark Branch, NAACP v. Millburn Township*, Civ. No. 89-4219, 1990 WL 238747, at *6 (D.N.J. Dec. 27, 1990). In such a case, the usual rule that courts assess jurisdiction at the time of initial filing, *see Gadbois*, 809 F.3d at 5, gives way to a preference to decide cases on full facts. The alternative, *i.e.*, dismissing the complaint with the full knowledge that the plaintiff will immediately seek to amend, may simply be inefficient and wasteful. *Id.*; *see T-Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 329–30 (3d Cir. 2019) (discussing these reasons in the context of statutory ripeness, *i.e.*, when a statute determines when a plaintiff may file a claim).

The Second Complaint's pertinent additional allegations relate to post-complaint events: the modification of Mr. Przywieczerski's prison term and an incorporation of the Government's arguments in its motion to dismiss.[3] As such, I should treat his motion to amend as a motion to supplement. *See Garrett*, 938 F.3d at 81 n.17 (the labeling of the motion as one to amend does not determine the district court's appropriate treatment of the motion as one to supplement); *Korb*, 2021 WL 2328220, at *3 (holding that district court should have treated filings providing supplemental allegations as a motion to supplement).

---

[3] While there is now additional documentation of the extradition process, it relates to matters already alleged in the First Complaint. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (a court may consider "a document integral to or explicitly relied upon in the complaint" as part of the pleadings (citation omitted)).

4

A motion to supplement should be granted "[o]n motion and reasonable notice" if the court finds "just terms." Fed. R. Civ. P. 15(d). The Government responded to the motion, albeit under the related motion-to-amend standard, so there was notice and it suffers no prejudice from this recharacterization. There are "just terms" because granting the motion will allow me to consider whether the additional allegations cure jurisdictional defects. *See Korb*, 2021 WL 2328220, at *2 n.5. Accordingly, the motion to amend is construed as a motion to supplement and granted. I take up the motion to dismiss in light of the allegations of the First Complaint, plus the supplemental allegations of the Second Complaint. *See id.* (the supplemental pleading adds facts to the operative pleading but does not supersede it).

### B. Motion to Dismiss for Lack of Jurisdiction

The Government moves to dismiss on the ground that this case is not ripe. (Mot. to Dismiss at 7–9.)[4]

"Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial Power' to 'Cases' and 'Controversies.'" *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538–39 (3d Cir. 2017) (quoting U.S. Const. art. III, § 2). One component of a case or controversy is that a real dispute has sufficiently developed between two parties and is not premature; this is called ripeness. *Id.* at 539. To determine whether claims for declaratory and injunctive relief are ripe, I consider, among other things, "the adversity of the parties' interests." *Id.* at 539–40 (citation omitted).[5]

---

[4] Under Rule 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject-matter jurisdiction over the dispute. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion is the vehicle for ripeness arguments. *Kyle-Labell v. Selective Serv. Sys.*, 364 F. Supp. 3d 394, 401 (D.N.J. 2019). A Rule 12(b)(1) attack can be facial where the defendant "attacks the complaint on its face without contesting its alleged facts." *Hartig Drug Co. v. Senju Pharms. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). In such a case, as here, the court only considers the allegations of the complaint and documents referred to therein, taken in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

[5] Ripeness is closely related to the doctrine of standing. *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam). Standing is also a component of a case or

On the first prong, parties' interests are adverse when there is a "substantial threat of real harm" absent declaratory or injunctive relief. *Id.* at 541 (citation omitted). But if the threatened harm is dependent on uncertain contingencies, then the case is not ripe. *Id.* Relatedly, in cases where the harm would be at the hands of an agency, the Third Circuit has considered "whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position." *Nextel Commc'ns of Mid-Atl., Inc. v. City of Margate*, 305 F.3d 188, 193 (3d Cir. 2002) (citation omitted) (challenge to decisions of a zoning board); *see also Felmeister v. Off. of Att'y Ethics*, 856 F.2d 529, 537–38 (3d Cir. 1988) (challenge to advertising regulations where state agency reviewed advertisements for compliance).[6]

Here, there has been no action or threatened action by the Government that could harm Mr. Przywieczerski. He has not been denied entry. He cannot even attempt to enter the United States for the next few months, as he will remain imprisoned until October. Nor has the Government affirmatively revoked his LPR status or stated that it will do so. There are no allegations that he has interacted with the Government at all.

At most, he contends that the Government's "position" in this litigation represents its adjudication of his LPR status. (2d Compl. ¶ 11; Opp. at 4, 6.) But the Government's explanation of the applicable statutory framework in a

---

controversy and requires the plaintiff to show an injury from the defendant's conduct. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998). So the issue here "can equally be described in terms of standing." *Plains*, 866 F.3d at 539. Nonetheless, the Third Circuit's framework for determining ripeness incorporates the considerations relevant to standing, so there is no need to do a separate standing analysis. *Id.* at 540.

[6]    These factors sound like the requirement in APA cases that a plaintiff challenge a "final agency action." I do not, however, address this case through the lens of that requirement because it is not jurisdictional and "instead, goes to whether there is a cause of action under the statute that provides for judicial review of a given agency determination." *Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 525 n.10 (3d Cir. 2018).

brief is not equivalent to a final adjudication of Mr. Przywieczerski's legal rights. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (an agency action is final if marks the "consummation" of the agency's decision-making process and is "one by which rights or obligations have been determined" (quotation marks and citation omitted)); *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 249 (3d Cir. 2011) (a final agency action often "represents the agency's definitive position on the question," "has the status of law," and "has immediate impact" on the party (citation omitted)); *Querim v. EEOC*, 111 F. Supp. 2d 259, 269–70 (S.D.N.Y. 2000) (agency's legal brief was not a final agency action), *aff'd*, 9 F. App'x 35 (2d Cir. 2001). Put simply, the Government has not done anything to create a case for Mr. Przywieczerski. *Cf. Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 186 (3d Cir. 2019) (case was ripe when lawful status was terminated by agency order).

Rather, the plaintiff seems to *predict* that his LPR status is no longer valid and seek preemptive judicial action. Along those lines, there is some authority for the proposition that a case is ripe if the court can make a "firm prediction" that the plaintiff will apply for a government benefit and be denied that benefit due to an allegedly unlawful position.[7] *Immigr. Assist. Project of L.A. Cnty. Fed'n of Labor (ALF-CIO) v. INS*, 306 F.3d 842, 863 (9th Cir. 2002) (citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 69 (1993) (O'Connor, J., concurring)); *see Plains*, 866 F.3d at 541 ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit . . . ." (citation omitted)); *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 643 (3d Cir. 1995) ("Litigants are not required to make such futile gestures to establish ripeness."). Even so, I cannot say that adverse action from the Government is "imminent" or certain. *Plains*, 866 F.3d at 541 (citation omitted).

---

[7] I set aside the final agency action problems which this proposition would create in this case. (*See* n.6, *supra*.)

The applicable immigration laws explain why. Ordinarily, LPRs can go abroad and return without going through the admissions process required of nonresidents. 8 U.S.C. § 1101(a)(13)(A), (C). But if the LPR "has been absent from the United States for a continuous period in excess of 180 days," he[8] must seek admission. *Id.* § 1101(a)(13)(C)(ii). LPRs who have been abroad for an extended period, like Mr. Przywieczerski, "will generally need '[a] valid, unexpired immigrant visa' to reenter the United States." *Doe v. Pompeo*, 451 F. Supp. 3d 100, 105 (D.D.C. 2020) (quoting 8 C.F.R. § 211.1(a)(1)). The visa for this situation is "the SB-1 returning resident visa." *Id.* (citing U.S. Dep't of State, *Returning Resident Visas*, https://travel.state.gov/content/travel/en/us-visas/immigrate/returning-resident.html). For that visa, one applies to the U.S. consular office in the foreign country he is in. The reviewing consular officer must be "satisfied" that (1) the applicant had LPR status when he left the U.S., (2) he left "with the intention of returning and has not abandoned this intention," and (3) the visit abroad was "temporary" and, if "protracted," "was caused by reasons beyond [his] control and for which [he] was not responsible." 22 C.F.R. § 42.22(a). Determining an alien's intent and whether the visit was temporary is a fact-based inquiry. *Alaka v. Att'y Gen. of U.S.*, 456 F.3d 88, 103 (3d Cir. 2006), *as amended* (Aug. 23, 2006), *overruled on other grounds by Bastardo-Vale v. Att'y Gen. U.S.*, 934 F.3d 255 (3d Cir. 2019) (en banc).

That Mr. Przywieczerski will be denied a visa and admission, then, is by no means assured. The decision is discretionary. Moreover, Mr. Przywieczerski has not alleged any facts indicating that he categorically fails any of the three requirements or that they are unlawful. In fact, the visa application process will consider his main contention in this case: He has been outside the United States for a problematic period of time through, in his view, no fault of his own. (2d Compl. ¶ 10.) All said, there is a process for the relief Mr. Przywieczerski seeks, and it is not the Court's role to jump ahead of that process. *See Trump v. New York*, 141 S. Ct. 530, 536 (2020) (per curiam). ("Letting the Executive

---

[8] The plaintiff happens to be male, so I use the masculine pronoun for simplicity.

Branch's decisionmaking process run its course not only brings more manageable proportions to the scope of the parties' dispute, but also ensures that we act as judges, and do not engage in policymaking . . . ." (quotation marks and citations omitted)). To top this all off, contingencies would still abound even if Mr. Przywieczerski showed a right to an SB-1 visa. Such a visa holder "might still be inadmissible—and so subject to removal proceedings—for any number of reasons." *Doe*, 451 F. Supp. 3d at 106 (citing 8 U.S.C. §§ 1182(a), 1229a(a)). Thus, I can hardly make any prediction about the parties' legal positions vis-à-vis one another, so this case does not present the settled adversity of interests necessary for a ripe case.

I understand that Mr. Przywieczerski may have brought this action because he thinks he will have no recourse from an adverse decision by a consular official. (*See* 2d Compl. ¶ 11.) That is, the doctrine of "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see also Onuchukwu v. Clinton*, 408 F. App'x 558, 560 (3d Cir. 2010) (per curiam) (recognizing doctrine); *Cortes v. Sec'y, Dep't of Homeland Sec.*, No. 6:08-cv-1688, 2009 WL 10670142, at *1 (M.D. Fla. Mar. 23, 2009) (doctrine barred review of denial of SB-1 visa). But being subject to the prescribed procedures is not a legal "injury," and the fear that later judicial avenues may be closed to him cannot excuse the constitutional requirement that he *presently* face an injury.

### III. CONCLUSION

For the reasons set forth above, the motion to amend the First Complaint will be treated as a motion to supplement and granted. The motion to dismiss these combined pleadings will be granted. A separate order will issue.

Dated: June 9, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

9